It's almost there. Very well. So you are Mr. Hayes, is that right? That is correct, Your Honor. All right. Please proceed, Mr. Hayes. Thank you, Your Honor. For the appellant in Chapter 7, trustee, my name is Ed Hayes of Marshack Hayes. This appeal involves the—oh, I'd like to say four minutes for rebuttal if I may. Okay. This appeal involves the review of an agreement and exercise of discretion contract executed by a Chapter 7 debtor for no consideration and well insolvent to determine if the contracts amounted to a transfer of property to the debtor's mother, Mrs. Patow, or if it amounted to a disclaimer. The bankruptcy court found that the debtor accepted his interest in the trust by specifically consenting that his mother, Mrs. Patow, could invade the trust property and take it all for herself when she was not the designated alternate beneficiary. The issue on appeal arises in the context of a fraudulent transfer action filed by the bankruptcy trustee seeking to avoid the debtor's transfer of property rights. There's no dispute that the debtor's interest in the trust constituted property. There's no dispute that the debtor was insolvent when he entered into the contracts. There's no dispute that the debtor did not receive any consideration. And while the debtor's mother had some limited rights to invade the trust assets to provide for her health, education, maintenance, or support, there is no dispute that Mrs. Patow did not take the trust assets for any of those reasons. Counsel, let's say all that's true. What troubles me is the fact you've got a spendthrift clause here. And my understanding of California law is that James could not, as a matter of law, voluntarily or involuntarily transfer his interest in the assets because of that clause. Is that incorrect? There may have been a spendthrift clause, but whether you can legally do that or not legally do that, the debtor in this case, in fact, did do that. As you know, that's the whole part of a spendthrift clause. If you have somebody who just wastes all the money and they want to do whatever, it is basically avoidable act because you have the spendthrift clause. This is a close question, and you know the BAP reviewed this, and the BAP concluded, contrary to your position, and I believe what the primary motivation was is they figured that James was legally incapacitated from making a transfer along the lines of what you're talking about. What did they miss? Several things, Your Honor. If the debtor could not have entered into this contract purporting to transfer the rights or consent to his mother taking the property... Let me correct it to this. In the question of whether he could have signed a disclaimer where he wasn't getting anything, but the question is can he transfer something that he owns to someone else? And of course, that's what has to happen in order for you to be successful. He has to have a right, even just momentarily, to have this property, make it his, and the point is how could he do that given the spendthrift clause? If he can't do it, then he's still the beneficiary, but that's not the case here. I think you're missing the point that I think Judge Smith is you're saying was a transfer, right? They seem to have kind of done them at the same time. It's a little unclear because they're in different orders, but it's in one document, so let's just assume that they're at the same time. They did two things. One was he said he was waiving everything, and I think it's also true as a matter of California law. The spendthrift clause does not... I think the spendthrift clause's language said that he could disclaim, so one was waiving everything that he did, and the other was what you're characterizing as a transfer, so even assuming it was an attempt to transfer, if he tried to do two things, but he couldn't do the one because he's not allowed to, the other one could still be effective, the waiver slash disclaimer. But I understand the question, and I guess I'm struggling on how to answer it clearly to communicate my point. If the debtor had not signed any of these documents, we have the California Supreme Court case that was fairly recent. I think it was called Carney that talked about spendthrift clauses are not unlimited, and creditors can get to money notwithstanding a spendthrift provision, so what we have is a situation where if the documents had never been entered into, the credit, the debtor would have retained the rights to receive money, and creditors would have had the opportunity to intercept and receive some of that. I think we all know that, but we all also know that he did sign them, so the question is, when he tries to do two things, if he can't do the one, is your argument then that somehow the fact that he was trying to do two things, and even so assuming that he couldn't do the one because of the spendthrift clause, that the other never happened? I think when you take the documents together as a whole, and you look at, and the exercise of discretion was attached to the agreement, and they were signed simultaneously, and when you look at the recitals that says that Mrs. Patel, and this is a quote, wishes to exercise her right to distribute all of the principal of the bypass trust and have it transferred to her, that's the express purpose in the recital, is to invade the principal and have it transferred to her, and then the debtor is consenting to this, and the debtor in the agreement also agrees to sign the exercise of invading the principal of the trust to return it all to herself, so he's consenting, he's agreeing by contract, whether he had the ability to do that or not, he's agreeing by contract that his mother can transfer all the money to herself and invade all of the principal, and so what we have Is that effectively just a disclaimer? Well no, it's not a disclaimer because the California probate code specifically provides at section 282 that in the event of a disclaimer, the interest disclaimed shall go to be distributed or go to a successor beneficiary, and this, his mother was not the successor beneficiary of this trust. So he was trying, so what he, I don't think, I think we all agree, including I think maybe your opposing counsel agrees, that what he was, what he thought would happen when he got, when he disclaimed was not actually what happened, but, but does that still change what he did? He tried to do two things, he thought a certain outcome would happen, one of the two things he was not allowed to do, so it was nullified, but the disclaimer still happened, it didn't have the effect that he intended, which was that it would go to his mother, it went to his aunt instead, but, but why, why, why isn't that what happened here? But that's not what in fact happened, what in fact happened was his mother took all of the property, so it wasn't a valid disclaimer by the government that it had gone to his aunt or his sister. But that, that's, that's a, that's a beef between you and the aunt, because he'd already disclaimed and it had passed to the aunt, and then his, his mother took all the property, so that's, that's between you and the aunt, right? Not between you and him. Well, no, I would disagree, because the debtor by these contracts did purport to transfer his rights to his mother, and then his mother, and it did, and it didn't happen. Okay, I guess I'm seeing these documents in an entirely different way. His mother, as the trustee, had the right to take assets out of the, the bypass trust, right? She could take money for certain purposes, her health, welfare, to support her, her manner of living, and what happened was she did more than that. She, she took all of the money out of the trust, and so the beneficiary's right would be to sue her, right, for a breach of fiduciary duty, but they, they did, they consented and they waived the right to sue her. So they didn't take the money and receive it and transfer it, they just let her take the money and they waived the right to sue her for breaching her fiduciary duty. I mean, how does that mean that they had the money and they, and they transferred it to themselves, and so whatever happened here was not legal, and if their right, if their right was to sue the trustee and they disclaimed that right, they waived the right to sue her, can the bankruptcy trustee step into their shoes? I mean, does the trustee have, right, do you have the right to sue the mother for the breach of the fiduciary duty? Absolutely, your honor. Okay, but they waived it, so if you step into their shoes, there's no remaining right to sue her. Well, which, which in and of itself would be a transfer of an interest in property subject to avoidance as a fraudulent conveyance, because the debtor was insolvent and received no consideration. So even if you were to interpret the agreements the way your honor just expressed, it's, it's releasing a claim and the release of a lawsuit claim is a transfer of a property right subject to avoidance. So, so even if you interpret it the way you did, your honor, there is a fraudulent conveyance here that the trustee can avoid and recover, and now the trustee has the ability to sue the mother for the breach of fiduciary duty. Now, doesn't the California probate code say that a disclaimer is not a fraudulent conveyance? If it, in fact, is a disclaimer, then what we're really, what we're really talking about here is what happened, a disclaimer. That's really what it boils down to. Is how do you interpret the agreement and the exercise of discretion? If it's a disclaimer, it's not a fraudulent conveyance. If it was an acceptance and assignment or transfer of property rights, it is a fraudulent conveyance. That's the exact question, your honor. BAP said it was a disclaimer. That is correct, and the bankruptcy court reached the contrary result. Correct. Okay, so here's another point that I'm, I'm sure I'm just missing the significance, but it seemed to me that all these documents were signed years before James filed for bankruptcy. Does that timing matter? Well, the bankruptcy code and state law provide that a transfer can be avoided if it was made within four years prior to the creditor claim or prior to the bankruptcy, and there is provisions in 3439 to extend that to one year after the date of discovery, but generally, you can attack a fraudulent conveyance if it occurred within four years. Can I, so I think this may be helpful. Uh, if, if they didn't have any of this consent language that you're saying is, is in fact a transfer, so, you know, there's, there's all this consent language, and there's also the waiver language in, in both the agreement and in the, the attachment to the agreement. If there was none of the consent language and all there was was exactly the same waiver language that is in this agreement about waiving their right, what would your reason I'm asking, I'm trying to figure out, is does your position that there was not a disclaimer here turn on the fact that, that there was all this extra consent language, or is it just that you don't think this language was a disclaimer? If, if we did not have the exercise of discretion and if all we had was the agreement and if all the agreement provided for was the debtors hereby, uh, waive any and all rights they may have under the terms of the trust, then I think it is a disclaimer. Okay, so that's really important, that's, that's important because then the question becomes to kind of circle back to where, where we started a little bit, if, if we think that the spendthrift clause sort of wiped out all that consent language, so essentially made it all be a nullity, then why wouldn't we end up just saying all that's left is the disclaimer? Because again, I think that you have to look at the entirety of the and even if someone cannot purport to, um, make a transfer due to a spendthrift provision, they in fact did. So your, your, your point is sort of that metaphysically he went out and he grabbed his stuff and he tried to pan it, the spendthrift clause kept him from handing it off, but him metaphysically grabbing it was good enough to have exercised the control that killed his to, um, to disclaim. That seems, that has to be your point, kind of. I, I, it is, but I phrase it slightly different, your honor, and the way I'd phrase it is, let's look at an involuntary transfer where a creditor comes along and tries to grab onto a debtor's interest in the trust. The spendthrift provision then allows the trustee to ignore that involuntary transfer and the I want to give my rights to John Doe and then John Doe shows up, knocks on the door and says to the trustee, please give me all of the debtor's rights in this trust. The, the trustee of the trust can say, I'm going to ignore that because of the spendthrift provision. But what you have here was an agreement between the trustee and the beneficiary of the trust to say, we will, notwithstanding this spendthrift language, agree to something and this is what we are agreeing to. And when you look at the stated and admitted purpose of the document and the provisions of that document, you can reach only the result that I think the bankruptcy court reached, which is the debtor was accepting his benefits in the trust and he was trying to give his property to his mother when he was insolvent and had creditor trouble. Thank you. You're out of your time. Maybe give me a little extra after we hear from the other side, but let's save whatever time you have for rebuttal. Very well, Mr. This is Mr. Switzer, right? That's correct, your honor. Very well. Good morning. If it pleases the court, I'd like to add some, my name is Ed Switzer and I represent the responding party, Linda Patel. I'd like to provide some context here, a little bit of the background. This trustee of this trust was a family trust and she had been advised by her lawyer that her trust, her bypass trust, was not having a tax benefit as it was expected to and, in fact, was going to cost the trust beneficiary's money in the long run. So she was advised she needed to transfer that into the spin thrift trust, which was a revocable trust and didn't have the tax benefits and would lower the basis for the property would be transferred from the date of her husband's death to her death, which would save gigantic amount of taxes, capital gains taxes. So the purpose of the agreement and the consent form was her attorney wanted to make sure that clear notice was given to the beneficiaries of what she intended to do, to transfer the property from the bypass trust to the spin thrift trust. And that notice included language that explained clearly to the beneficiaries that by doing that they had a contingent interest in the bypass trust. They would be giving that up completely by her actions to transfer it. So the document provided that they could, all the information that would meet the requirements of a disclaimer under California law, and there are several different requirements. It has to list who the creator of the trust was, the property in the trust that was going to be transferred, the extent of the trust, extent of the disclaimer, signed and then filed with the trustees. So it had steps that a disclaimer had to go through. So he did all those things. The attorney did all those things with the agreement. He also provided an extra consent form to just add additional assurances that the were planning to do with this property. But counsel, you seem to be agreeing with opposing counsel to this degree. You seem to be saying that he was giving up a contingent beneficial interest. How do we reconcile that with the concept of a disclaimer? A disclaimer, your honor, is where a person, well the basis of the principle of a disclaimer is a person can't be required to accept a gift or a bequest and they have an absolute right to disclaim it. And the problem in this case that developed is that the consent has been interpreted as an acceptance. And that disclaimer rule that says no one can be forced to accept something has an exception that if you have accepted it and used it or got the benefit from it, then you can't later disclaim it. So in this case it had some of both. It had the disclaimer using the waiver language and all the disclaimer has to do doesn't have to state disclaimers. You can just say anything that gives up the interest in the property, renunciation, etc. So the consent form presented a problem in that it was designed just to add additional information or notice to the beneficiaries that they understood clearly that their mother was going to transfer the property to herself and then to the Spendthrift Trust. Counsel, we disagree with you on that and we agree with your opposing counsel and we say no, the consent was in some sense a transfer. If I had a whole bunch of money and I just signed a consent saying I won't sue Judge Smith if he goes and picks up that big pile of money off my front porch, I could see where you would say that's a transfer. That's a transfer. I'm not disclaiming it to the world. I'm just letting Judge Smith come and the fact that I characterize it as a consent doesn't change the fact it's a transfer. I'm a little surprised the argument you're making. I don't think the facts actually help you because I think the facts in this case, he was kind of trying to transfer this all back to his mom, so to speak. It seems to me your best argument is that regardless of what he was trying to do, it seems to me that I thought that's where you'd come in your briefing in this case, that regardless of what he was trying to do, he disclaimed and the Spendthrift Clause kept him from being able to do anything else. I think that's an accurate statement and I didn't get to the Spendthrift Clause, but I think the court's interpretation of that is correct. Is your position that a consent along the lines of what we have, what was attempted here, is not a transfer? Because you're opposing counsel, and I'm not an expert on California law, but it seems intuitive to me that a consent would be a transfer given the crazy hypo I just gave. If I consent to one person taking my property, and I promise I won't sue about that, I'm essentially transferring it to them or at least giving them the opportunity to effectuate a transfer. And I certainly couldn't call that a disclaimer because I'm not saying Judge Beatty can have my pile of cash that's on my front porch, just Judge Smith. So it's not a disclaimer. It's giving it to one person, so to speak. I disagree. I think the fact is that the consent was part of the disclaimer. It actually was giving up the interest in the property exactly the same way and reinforcing. It was kind of wrong as to what, because I think you now say, if I remember right, you now say that it didn't actually go to his mom, so it went to his aunt. Well, the property, when it was disclaimed by signing the agreement and the consent, it went automatically to the aunt. And at that point, I mean immediately it went there. So his aunt could have complained about the mom. Absolutely, the aunt could have come back after Mrs. Patel for taking her property. But she didn't. The transfer was made. And the transfer, Mrs. Patel's transfer, it may have been outside her responsibilities or her limits in the trust, but the one that can complain is the secondary beneficiary because once the disclaimer took place. Is your position that that's what this agreement intended to effectuate? Because it doesn't seem to me like they knew whoever prepared all this didn't realize it was going to go to the aunt. Well, I think there would probably be some second thought just to how it was prepared. I can The receipt of the property by the secondary beneficiary would have occurred immediately upon the disclaimer, which was in the actual agreement, the waiver, was the waiver language, was the disclaimer. And once that happened, the property automatically goes to the next in line, which was Trisha Meredith, the aunt, I think, of the beneficiary and the sister of the Really, maybe two different transactions. Where, first of all, there's a disclaimer, and the property automatically goes to the aunt. But then the tax lawyer, probate lawyer wanted to protect his client and wanted to be sure that the son would not later complain, dispute something. So he signed the consent. But at that point, the property had gone. There had been a disclaimer. I almost think of the old California maximum jurisprudence. Was it 3537? Superfluity does not vitiate. Is that what we've got here? I'm not quite familiar with that expression. I feel like I need to explain something else to the court or clarify something. Well, it seems that the bankruptcy trustee's argument is that James came into possession of the assets in the trust and then transferred them to his mother through the survivor's trust. But what I understand you to say is that never had possession of any assets in the trust. No, he never had possession. Once he did the disclaimer, it was gone automatically. Operation of law under California Probate Code 282, I believe. So it became Patricia Meredith's property from that point forward, the secondary beneficiary. And the consent would have been virtually meaningless because he was consenting to something that made no difference. The property was gone by then. Or his interest in the property, rather. Would it matter whether he signed the consent first before the disclaimer? Well, it matters in this regard. If the consent is signed first, the bankruptcy court held that it would have been a prior transfer and that the beneficiary couldn't have done the consent form if the disclaimer had been signed. So, I'm sorry, I've lost my train of thought. Does the record show which document was signed first? It does not show clearly which document was signed first, but the trial judge held that if the consent was signed first, then it vitiates the disclaimer. And if the disclaimer was signed first, he was no longer a beneficiary. So he couldn't have done the consent form. So the bankruptcy court upheld the consent form and not the disclaimer. So, and the BAP did what, from your perspective? Well, what the BAP did, it looked at what the bankruptcy court did, and under the de novo standard, determined that... I'm sorry, I've totally lost my mind here. What do we do with this fact? I mean, as I look at it, if the disclaimer was signed first, the consent is really more a tax benefit for the mother, but didn't transfer anything. If, on the other hand, the bankruptcy court is correct that the consent was signed first, then it may be a problem. So what do we do with that? The bankruptcy court found one thing, the BAP said something else. Do we rely on the BAP? Do we toss a coin? What do we do? The bankruptcy court's reasoning was that if James had signed a disclaimer first, then he would have no longer been the beneficiary, so he could not have done a consent. But she said, to preserve the consent, she said the disclaimer was invalid, and the consent was the valid of the two documents. Who said this? The mother? No, the bankruptcy court said that. Do you agree that if the consent form was signed first, that the bankruptcy trustee would be correct? No, I don't. What saves you, the spendthrift clause? The spendthrift clause is part of it, but that's just one additional reason. The reasoning the bankruptcy court used to state that the beneficiary or the consent was formed first is that James would no longer be a beneficiary and could not consent. So she upheld the consent rather than the disclaimer. But the exact same argument could be used that the disclaimer came first and it invalidated the consent, and the consent didn't exist anymore because he had no power to consent. But the record does not show which document was signed first. It shows that they were signed at the same time, and the bankruptcy court found, signed at the same time in front of a notary public and filed immediately by handing it to the trustee, which completes the transaction, both documents at the same time. So for purposes of our analysis, what are we to assume? Which document was signed first? Well, I think since it was the original agreement had the disclaimer in it and the consent was an exhibit to that, it would seem the main agreement would have been signed before the... So the consent document was an exhibit to the disclaimer? It was an exhibit to the disclaimer. All right. Thank you. Unless the court has further questions, I will ask to submit. Any other questions by my colleagues? Very well. Thank you, Your Honor. All right. Mr. Hayes, we'll give you a minute. We took you down to Red Little, so we'll give you a minute to rebut. I thought I had reserved four. I don't think I... But you wanted to reserve four, but we took you down well below that. Oh, I'm sorry. I did not realize the clock started. You have to remind us that you want to stop. I was thinking the clock started at 11, and that's why I was misunderstanding, but I'll make it quick. I don't think I would have needed four minutes. Counsel, let me ask you, what is your position on the order, A, factually, what order you think they're signed in, or if you think they're signed simultaneously, and B, what implication that has? Does order matter? The bankruptcy court found, and I think it's a finding of fact reviewed for clear error, that the exercise of discretion was signed first, and that was something the court specifically found. I think it also is important to note that the agreement required the debtor to sign the consent to discretion that was attached, and so I think both from a contract enforcement point of view and factually as determined by the bankruptcy court, the exercise of discretion came first. And the other main point that I would like to make is the discussion we had on my opening comments and argument was that if something was done in violation of a spendthrift provision, that it's void, that it has no enforceability, that it has no effect, and I don't think that that's the law, and there was no law cited by the bankruptcy appellate panel to reach that conclusion, and I think there is California case law, DeMille v. Ramsey, and other cases that say agreements by beneficiaries can be enforced when they're voluntarily transferring their interest in property, so even assuming this violated the spendthrift provision, I don't think the proper result is that the whole thing is a nullity. I think you still have to look and consider that a beneficiary can make a voluntary transfer of their interest in the trust. Other questions by my colleagues? Thanks to both counsel for your argument in this case. The case of Pato v. Marsh Act is submitted, and the court stands adjourned for the day. Thank you, your honors. I note that our law clerks are going to be talking to the folks in the central district and so on, and then we will be out after conference. All rise.
judges: SMITH, BADE, VANDYKE